**In re Jerry R. SAVAGE, Debtor.**

**Jerry R. SAVAGE, Plaintiff–Appellee,**

v.

**INTERNAL REVENUE SERVICE, Defendant–Appellant.**

**BAP No. WY–97–069.**

**Bankruptcy No. 93–20458.**

**Adversary No. 93–2057.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Feb. 19, 1998.

---

**2.** A.R.S. 13–2318 *et seq.* regarding criminal forfeiture.

Submitted on the briefs: *

Aleksander D. Radich, Assistant United States Attorney, Cheyenne, WY, and Susan A. Laughlin, Trial Attorney, Tax Division, Department of Justice, Washington, DC, for Defendant–Appellant.

Rex B. Bushman, Salt Lake City, UT, and Michael F. Chadey, Rock Springs, WY, for Plaintiff–Appellee.

Before CLARK, PEARSON and CORNISH, Bankruptcy Judges.

OPINION

CORNISH, Bankruptcy Judge.

The Internal Revenue Service ("IRS") appeals a Judgment entered by the United States Bankruptcy Court for the District of Wyoming concluding that (1) a portion of the Debtor's tax debt for 1987, in the amount of $4,563.29, was nondischargeable pursuant to 11 U.S.C. §§ 507(a)(8)(A)(ii) and 523(a)(1)(A)[1] because the IRS had assessed

---

\* After examining the briefs and appellate record, this Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed.R.Bankr.P. 8012; 10th Cir. BAP L.R. 8012–1(a). The case is

therefore ordered submitted without oral argument.

1. Unless otherwise stated, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

the debt within 240 days of the Debtor's petition date; (2) any tax liability for 1987 in excess of $4,563.29 was dischargeable; and (3) the Debtor's debts for taxes for 1982 through 1986 and 1988, plus interest and penalties, were dischargeable. The IRS does not contest the Bankruptcy Court's decision regarding the nondischargeability of the 1987 tax debt in the amount of $4,563.29. Rather, the IRS contends that the Debtor's tax debts for 1982 through 1986 and 1988 are not dischargeable pursuant to § 523(a)(1)(B)(i) because the Debtor did not file tax returns for those years, and that any debt for taxes in excess of $4,563.10 for 1987 is similarly nondischargeable. We find that the decision of the Bankruptcy Court regarding the dischargeability of the Debtor's tax debts for 1982 through 1985 should be reversed, but that the Bankruptcy Court's decision as to dischargeability of the Debtor's tax debts for 1986 through 1988 should be affirmed.

### JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel, with the consent of the parties, has jurisdiction to hear appeals from the final judgments, orders, and decrees of Bankruptcy Judges within this Circuit. 28 U.S.C. § 158(a)(1), (b)(1), (c)(1). The order appealed by the IRS is a "final" order under 28 U.S.C. § 158(a)(1). On October 15, 1997, the District Court for the District of Wyoming entered an Order transferring this case to the Bankruptcy Appellate Panel, with the consent of the parties. Accordingly, this Court has jurisdiction over this appeal.

The Bankruptcy Appellate Panel may affirm, modify or reverse a Bankruptcy Court's Judgment, Order or Decree, or remand with instructions for further proceedings. Fed. R.Bankr.P. 8013. Findings of fact shall not be set aside unless they are clearly erroneous. *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988); *First Bank v. Reid (In re Reid),* 757 F.2d 230, 233–34 (10th Cir.1985). Conclusions of law are reviewed de novo. *Pierce,* 487 U.S. at 558, 108 S.Ct. at 2546.

### FACTS

The Debtor failed to timely file his Form 1040 tax returns for the tax years 1982 through 1988. As a result, the IRS prepared substitute returns for these taxable years, pursuant to 26 U.S.C. § 6020(b)(1). The last substitute return was prepared on April 19, 1990. The IRS sent the Debtor a notice of deficiency for each of the tax years. The notice provided that the Debtor could not file a claim for a refund until he paid the taxes that were due. The Debtor did not file any petitions with the Tax Court. The IRS assessed taxes for the tax years in question as follows:

| | |
|---|---|
| 1982 | $2,894.00 |
| 1983 | $8,332.00 |
| 1984 | $2,458.00 |
| 1985 | $4,588.00 |
| 1986 | $7,007.00 |
| 1987 | $1,579.00 |
| 1988 | $3,883.00 [2] |

The substitute returns prepared by the IRS for 1982 and 1983 reflected an address for the Debtor in Stockton, California. The substitute returns prepared for the remaining years in question reflect an address for the Debtor in Farson, Wyoming. The parties agree that the Debtor's residence was in Farson, Wyoming for all relevant periods subject to this appeal.

On November 6, 1990, the Debtor filed Form 1040 tax returns for the 1986 through 1988 tax years with the IRS's servicing center in Ogden, Utah. Despite language in the IRS's notice of deficiency prohibiting the Debtor from filing a claim for refund until he had paid the taxes that had been assessed against him, these returns were treated by the IRS as amended returns or claims for refund.

On January 17, 1991, the Debtor hand delivered Form 1040 returns for the tax years 1982 through 1988 to the IRS's office in Portland, Oregon. The Bankruptcy Court found that the Debtor filed returns in 1991 for the tax years 1982 through 1988 in the IRS's Portland, Oregon office, despite its finding that the Debtor had filed

---

**2.** The Debtor and the IRS entered into an agreement to an audit deficiency in this amount.

returns in 1990 in Ogden, Utah for the overlapping tax years of 1986 through 1988. Regardless of these seemingly conflicting factual findings, the Bankruptcy Court found the Debtor's returns for the tax years 1982 through 1985 were filed in Portland, Oregon and the returns for the tax years 1986 through 1988 were filed in Ogden, Utah. It is undisputed that, due to the Debtor's residency in Wyoming, the IRS's Ogden, Utah servicing center was the appropriate place for the Debtor's tax returns to be filed. However, delivery of the returns was not refused by the Portland office, and the returns were not sent back to the Debtor. Although the IRS has no record that these returns were ever filed, the exhibits presented to the Bankruptcy Court apparently had cover sheets that were stamped with an IRS received stamp dated January 17, 1991. Furthermore, although the returns presented to the Bankruptcy Court were unsigned, the Debtor submitted an Affidavit stating that all returns he delivered to the IRS were signed. The Bankruptcy Court found that there was no evidence in the record to contradict his sworn statement, and based on the record before us, we cannot say that this finding was clearly erroneous.

In February of 1993, the IRS made an additional assessment of the Debtor's 1987 taxes ("1993 Additional Assessment"). In addition to amounts that had been assessed by the IRS in or about 1990 for the tax year of 1987, the IRS assessed the Debtor taxes in the amount of $4,563.19. This 1993 Additional Assessment was apparently never contested by the Debtor.

The Debtor filed for protection under chapter 7 of the Bankruptcy Code on June 28, 1993. Subsequently, he filed an adversary proceeding seeking a determination as to the dischargeability of his tax debts for, in relevant part, the years of 1982 through 1988 under §§ 507(a)(8) and 523(a)(1)(A) and (B). The matter was submitted to the Bankruptcy Court on stipulations of fact, memorandum of law, affidavits, and exhibits. The Bankruptcy Court determined that the Debtor properly filed his 1982–1985 tax returns by delivering them to the IRS's Portland, Ore-

gon office, as opposed to the IRS's Ogden, Utah servicing center. It was uncontradicted that the returns were signed by the Debtor. Therefore, the Debtor's debts for taxes for 1982–1985 were not excepted from discharge under § 523(a)(1)(B)(i). The Bankruptcy Court also found that the Debtor's amended tax returns for the 1986–1988 tax years, which were filed in the IRS's servicing center in Ogden, Utah were also "returns" for purposes of § 523(a)(1)(B)(i). As a result, the Bankruptcy Court refused to deny the Debtor's discharge as to his 1986 through 1988 taxes under § 523(a)(1)(B)(i). Finally, the Bankruptcy Court determined that all of the Debtor's tax debts, with the exception of the portion of the Debtor's 1987 tax debt set in the 1993 Additional Assessment, were not priority debts under § 507(a)(8)(A)(ii) because they were assessed by the IRS more than 240 days prior to the Debtor's petition date. Therefore, the taxes were not excepted from discharge under § 523(a)(1)(A). Since the debt established in the 1993 Additional Assessment was assessed by the IRS within 240 days of the Debtor's petition date, it was held to be a priority claim under § 507(a)(8)(A)(ii), and therefore nondischargeable under § 523(a)(1)(A).

Since this matter was submitted to the Bankruptcy Court on stipulations, there are no factual disputes. The IRS contests that portion of the Bankruptcy Court's Judgment finding that the Debtor's tax debts for the tax years 1982 through 1986 and 1988 are dischargeable under § 523(a)(1)(B)(i). In addition, the IRS contends that any tax debt owed for the 1987 tax year in excess of the amount of the 1993 Additional Assessment should be nondischargeable under § 523(a)(1)(B)(i).

## DISCUSSION

Section 523(a)(1) provides, in pertinent part:

A discharge under section 727 . . . does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

. . .

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition....

11 U.S.C. § 523(a)(1)(B). Exceptions to discharge are to be narrowly construed. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir.1997); *Driggs v. Black (In re Black),* 787 F.2d 503, 505 (10th Cir.1986). The Debtor must prove the filing of the returns by a preponderance of the evidence. *Campbell v. United States (In re Campbell),* 186 B.R. 731, 733 (Bankr. N.D.Fla.1995) (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); *see also Huber v. Massachusetts Dep't of Revenue (In re Huber),* 211 B.R. 767 (Bankr.M.D.Fla.1997). The IRS argues that the Bankruptcy Court erred in determining that a portion of the Debtor's tax debt for 1987 and all of his tax debts for 1982 through 1986 and 1988 are dischargeable because the Debtor did not file returns for those tax years. As a result, the IRS contends that the Debtor's tax debts are nondischargeable under § 523(a)(1)(B)(i). Review of this issue requires a separate discussion of the tax debts for 1982 through 1985 and the tax debts for 1986 through 1988.

**1. *The Debtor's tax returns for 1982 through 1985 were not "filed" and, therefore, the tax debts for those years are nondischargeable under § 523(a)(1)(B)(i).***

■ Because Portland, Oregon was the improper place to file his returns, we find that the Bankruptcy Court erred in determining that the Debtor's 1982–1985 returns were "filed." Since, as a matter of law, the returns were not "filed," the Debtor's tax debts for those years are nondischargeable under § 523(a)(1)(B)(i).

A tax return is to be filed (1) in the Internal Revenue District in which is located the legal residence of the debtor, or (2) at the Service Center servicing the district in which the debtor's residence is located. 26 U.S.C. § 6091. The Wyoming Bankruptcy Court noted that "meticulous compliance with the provisions of the I.R.C. is required and hand delivery to a collection agent has been found insufficient." Decision at 5 (citing *Espinoza v. Commissioner,* 78 T.C. 412, 1982 WL 11163 (1982)). The Bankruptcy Court further noted that under certain circumstances, exceptions had been made. *Id.* (citing *McTear v. IRS (In re McTear),* 1994 WL 389469 (Bankr.E.D.Pa.1994)).

In *McTear,* the issue was whether the debtors had filed their tax returns. The testimony was that the McTears hand delivered copies of their tax returns to the IRS. *McTear,* 1994 WL 389469, at *1. The *McTear* court relied upon *United States v. Lombardo,* 241 U.S. 73, 76, 36 S.Ct. 508, 509, 60 L.Ed. 897 (1916), for the proposition that filing is complete when the document is delivered and received by the IRS. *Id.* at *3. *See also Emmons v. Commissioner,* 898 F.2d 50, 51 (5th Cir.1990); *Phinney v. Bank of the Southwest Nat'l Ass'n,* 335 F.2d 266, 268 (5th Cir.1964). "A paper is filed when it is delivered to the proper official and by him received and filed." *Lombardo,* 241 U.S. at 76, 36 S.Ct. at 509 (citations omitted). The *Lombardo* Court was making the distinction between filing when the document was placed in the mail versus the physical delivery to the appropriate office. These cases do not deal with the issue of whether returns are filed when they are delivered to the wrong Internal Revenue Office.

■ Courts have held that filing a return with the wrong IRS agent does not constitute "filing" for statute of limitation purposes. *Winnett v. Commissioner,* 96 T.C. 802, 1991 WL 100777 (1991) (citations omitted). The statute of limitations is analogous to a bankruptcy discharge. *United States v. D'Avanza,* 132 B.R. 462, 464 (M.D.Fla.1991). "Both situations require a determination as to whether a tax debtor will be relieved of his legal duty to pay." *Id.* The policy behind the statute of limitations is to provide the IRS a time in which to audit the taxpayer's return and assess additional liability for most recent taxes. Section 523(a)(1) also allows the government to collect most recent taxes or those taxes for years in which returns

have not been filed. Accordingly, similar to the statute of limitations cases, returns will not be deemed to be "filed" for purposes of § 523(a)(1)(B)(i) unless they are delivered to the proper IRS agent under 26 U.S.C. § 6091.

The Debtor did not follow the correct procedure when filing his tax returns for 1982 through 1985. As a resident of Wyoming, the Debtor was required to file his tax returns under 26 U.S.C. § 6091 in Wyoming or in Ogden, Utah the location of the servicing center for Wyoming. Unfortunately, the Debtor followed his accountant's advice and delivered his returns for 1982 through 1985 to an IRS office in Portland, Oregon. Therefore, the Debtor's returns for 1982 through 1985 were not "filed," and are nondischargeable under § 523(a)(1)(B)(i).

The IRS additionally argues that the returns delivered to the Portland office were not signed. The only evidence before the Trial Court was that those returns delivered to the IRS Service Center in Portland, Oregon were signed. Thus, the Bankruptcy Court's finding that the returns were signed is not clearly erroneous and this argument must fail.

2. *The Debtor's tax returns for 1986 through 1988 were "filed," and therefore the Debtor's tax debts for those years (except for a portion of the 1987 tax debt held to be nondischargeable under §§ 507(a)(8) and 523(a)(1)(A)) are not excepted from discharge under § 523(a)(1)(B)(i).*

■ The Bankruptcy Court held that the Debtor's tax returns for 1986 through 1988, which were filed in Ogden, Utah were "filed," and therefore the Debtor's tax debts for those years (with the exception of the portion of the Debtor's 1987 tax debt set under the 1993 Additional Assessment, which is undisputably nondischargeable under §§ 507(a)(8) and 523(a)(1)(A)) were not excepted from discharge under § 523(a)(1)(B)(i). In so doing, the Bankruptcy Court rejected the IRS's argument, the same argument that it makes on appeal, that the returns filed for the Debtor were amended returns or claims for refunds, not the original returns, and such

returns are not deemed filed returns for purposes of § 523(a)(1)(B)(i). We conclude that the Bankruptcy Court did not err in finding that these tax debts were not excepted from discharge under § 523(a)(1)(B)(i).

It is undisputed that substitute returns filed by the IRS on behalf of a taxpayer, such as the substitute returns filed by the IRS in this case, are not "returns" for § 523(a)(1)(B)(i) purposes. *Bergstrom v. United States (In re Bergstrom)*, 949 F.2d 341 (10th Cir.1991). While the IRS filed substitute returns for the Debtor, the Debtor subsequently filed Form 1040 tax returns for 1986 through 1988 in Ogden, Utah and these returns were treated by the IRS as amended tax returns. The issue, therefore, is whether the Debtor's amended returns, filed after the IRS's substitute returns, are "returns" under § 523(a)(1)(B)(i).

Relying on *Arenson v. United States Through IRS*, 145 B.R. 310, 311 (D.Neb. 1992), the IRS argues that the Debtor's amended returns are not considered returns for dischargeability purposes. While *Arenson* does support the IRS's position, other courts have held otherwise. One court held a substitute return that had the debtor's signature on a Form 1902–B constituted a return under § 523(a)(1)(B)(i). *Lowrie v. United States (In re Lowrie)*, 162 B.R. 864 (Bankr.D.Nev.1994); *see also Bergstrom*, 949 F.2d at 343 (citing 26 U.S.C. § 6020(a), the court noted that a substitute return prepared by the IRS may be a "return" if signed by the debtor); *Gless v. United States (In re Gless)*, 181 B.R. 414 (Bankr.D.Neb.1993) ("return" as used in § 523(a)(1)(B) is not limited to returns actually filed by debtor, but is broad enough to include substitute return prepared by IRS if debtor signs that form and cooperates with IRS); *accord Berard v. United States (In re Berard)*, 181 B.R. 653 (Bankr.M.D.Fla.1995). Recently, another court determined that tax returns filed by the debtor after the IRS has prepared substitute returns were dischargeable. *Hindenlang v. United States (In re Hindenlang)*, 205 B.R. 874, 878–79 (Bankr.S.D.Ohio), *aff'd*, 214 B.R. 847 (S.D.Ohio 1997). The court in *Hindenlang* noted:

Further, the IRS's argument requires a departure from the strict statutory language of § 523(a)(1)(B)(i) which does not base the discharge of taxes on whether a return was filed prior to assessment. Such departures have been disfavored in the context of dischargeability of taxes. See e.g., *In re Smith*, 96 F.3d 800, 802 (6th Cir.1996) ("We have been rather consistent in denying 'equitable' pleas to disregard the strict timing rules of the Tax and Bankruptcy Codes").

Second, 11 U.S.C. § 523(a)(1)(B)(ii) provides a time requirement for filing a return for dischargeability purposes. In this section, the "2–year rule", Congress dealt specifically with the issue of when a return must be filed in order for the tax liability for that year to be dischargeable. The section requires filing of a return more than two years prior to the petition date. The section makes nondischargeable any tax from a required return which:

> (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition;

11 U.S.C. § 523(a)(1)(B)(ii).

This 2–year rule sets a time line which debtors must observe to gain discharge of their taxes. The section does not include any language concerning the assessment of the tax. Instead, the section creates a bright-line rule which says that if the debtor's return was filed less than two years pre-petition, the associated taxes are nondischargeable. Congress chose not to place significance on the time of assessment. This intent is clear when considering that Congress was aware of the role of assessment in dischargeability by virtue of the requirements of 11 U.S.C. § 507(a)(8)(A)(ii).

205 B.R. at 877–78.

When interpreting a statute, the court must first look to the statutory language. *Dalton v. IRS*, 77 F.3d 1297 (10th Cir.1996). " 'It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a section of a statute but omits it in another.' " *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (quoting *Chicago v. Environmental Defense Fund*, 511 U.S. 328, 338, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994) (internal quotation marks omitted)).

Congress specifically excluded any reference to assessment in § 523(a)(1)(B)(i). The Court has to assume that was Congress' intent. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Further, the IRS's interpretation would lead to absurd results. Effectively, a debtor, for whom the IRS prepares substitute returns, could never discharge taxes. We find nothing in the Bankruptcy Code that would lead us to adopt the IRS's argument. Accordingly, the determination of the Bankruptcy Court that the Debtor's tax debts for years 1986 through 1988, excluding that portion of the 1987 tax debt set in the 1993 Additional Assessment, were dischargeable should be affirmed.

In so holding, we note that numerous courts have relied on the definition of "return" established by the Supreme Court in *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940), and *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), to determine whether a document is a "return" under § 523(a)(1)(B). *See, e.g., Mickens v. United States (In re Mickens)*, 214 B.R. 976, 977 (N.D.Ohio 1997); *Hindenlang*, 214 B.R. at 848; *In re Thompson*, 207 B.R. 7, 11 (Bankr.M.D.Fla.1996); *Hindenlang*, 205 B.R. at 877; *Eastwood v. Dep't of Treasury (In re Eastwood)*, 164 B.R. 989, 992 (Bankr. E.D.Ark.1994). Under these cases, a document must: (1) purport to be a return; (2) be sworn to as such, under penalties of perjury; (3) contain sufficient data to allow calculation of tax; and (4) appear on its face to constitute an honest and genuine endeavor to satisfy the law. This definition, which in part depends on the good faith efforts of the taxpayer to file a return, appears to have application to the interpretation of "return" in § 523(a)(1)(B), especially given the legislative history of that section, which evidences an intent to punish debtors who engage in misconduct. S.Rep. No. 1106, 95th Cong.,

2nd Sess. 22 (1978), *quoted in Bergstrom,* 949 F.2d at 342. We cannot use this definition in this case, however, as the IRS, the party with the burden of proving the Debtor's debts to be nondischargeable, apparently did not raise this argument before the Bankruptcy Court. As a result, and because it involves factual inquiries that are beyond the scope of the appellate record, we will not address it in this case.

### CONCLUSION

Accordingly, for the reasons set forth herein, the decision of the Bankruptcy Court regarding the dischargeability of the Debtor's tax debts for 1986 through 1988 is affirmed, and its decision regarding the dischargeability of the Debtor's tax debts for 1982 through 1985 is reversed.